(Slip Opinion)     OCTOBER TERM, 2004     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DODD *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 04–5286.   Argued March 22, 2005—Decided June 20, 2005

On April 4, 2001, petitioner Dodd filed a *pro se* motion under 28
U. S. C. §2255, claiming that his conviction for knowingly and inten-
tionally engaging in a continuing criminal enterprise, in violation of
21 U. S. C. §§841 and 846, should be set aside because it was con-
trary to *Richardson* v. *United States*, 526 U. S. 813, 815, which held
that a jury must agree unanimously that a defendant is guilty of each
of the specific violations that together constitute the continuing
criminal enterprise.  The District Court held that, because *Richard-
son* had been decided more than one year before Dodd filed his mo-
tion, the motion was untimely under §2255, ¶6(3), which provides
that §2255's 1-year limitation period begins to run on "the date on
which the right asserted was initially recognized by the Supreme
Court, if that right has been newly recognized by the Supreme Court
and made retroactively applicable to cases on collateral review."  On
appeal, Dodd argued that ¶6(3)'s limitation period began to run on
April 19, 2002, the date the Eleventh Circuit recognized *Richardson*'s
retroactive application to cases on collateral review.  The Eleventh
Circuit held that the period began to run on June 1, 1999, the date
that this Court initially decided *Richardson*.

*Held:*

   1. The 1-year limitation period under ¶6(3) begins to run on the
date on which this Court "initially recognized" the right asserted in
an applicant's motion, not the date on which that right was made ret-
roactive.  The text of ¶6(3) unequivocally identifies one, and only one,
date from which the limitation period is measured: "the date on
which the right asserted was initially recognized by the Supreme
Court."  This Court presumes that a legislature says what it means
and means what it says in a statute.  Dodd's reliance on ¶6(3)'s sec-

ond clause to identify the operative date is misplaced. That clause merely limits the subsection's applicability to cases in which applicants assert rights "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Thus, ¶6(3)'s date—"the date on which the right asserted was initially recognized by the Supreme Court"—does not apply at all unless the conditions in the second clause are satisfied. This result may make it difficult for applicants filing second or successive §2255 motions to obtain relief, since this Court rarely announces a new rule of constitutional law and makes it retroactive within a year, but the Court is not free to rewrite the statute that Congress has enacted. Pp. 3–7.

2. Because Dodd's §2255 motion was filed more than a year after this Court decided *Richardson,* his motion was untimely. Pp. 7–8.

365 F. 3d 1273, affirmed.

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, and THOMAS, JJ., joined. STEVENS, J., filed a dissenting opinion, in which SOUTER, GINSBURG, and BREYER, JJ., joined as to Part II, except for n. 4. GINSBURG, J., filed a dissenting opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–5286

_____

## MICHAEL DONALD DODD, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 20, 2005]

JUSTICE O'CONNOR delivered the opinion of the Court.

Title 28 U. S. C. §2255 establishes a "1-year period of limitation" within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence under that section. That period runs from "the latest" of a number of events, which are enumerated in subparagraphs (1) through (4) of ¶6 of that section. This case involves subparagraph (3), which provides that the limitation period begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." We must decide whether the date from which the limitation period begins to run under ¶6(3) is the date on which this Court "initially recognized" the right asserted in an applicant's §2255 motion, or whether, instead, it is the date on which the right is "made retroactiv[e]."

## I

Petitioner Michael Donald Dodd was indicted on June 25, 1993, for knowingly and intentionally engaging in a continuing criminal enterprise in violation of 21 U. S. C.

§§841 and 846, conspiring to possess with intent to distribute marijuana in violation of §841(a)(1), conspiring to possess with intent to distribute cocaine in violation of §841(a)(1), and 16 counts of using and possessing a passport obtained by false statement in violation of 18 U. S. C. §1546(a). He was convicted of all counts except the cocaine charge, and was sentenced to 360 months' imprisonment followed by five years of supervised release. The Court of Appeals for the Eleventh Circuit affirmed on May 7, 1997. 111 F. 3d 867 *(per curiam)*. Because Dodd did not file a petition for certiorari, his conviction became final on August 6, 1997. See *Clay* v. *United States*, 537 U. S. 522, 525 (2003).

On April 4, 2001, more than three years after his conviction became final, Dodd filed a *pro se* motion under 28 U. S. C. §2255 seeking to set aside his conviction for knowingly and intentionally engaging in a continuing criminal enterprise, based on our decision in *Richardson* v. *United States*, 526 U. S. 813 (1999). *Richardson* held that a jury must agree unanimously that a defendant is guilty of each of the specific violations that together constitute the continuing criminal enterprise. *Id.*, at 815. Dodd argued, among other things, that he was entitled to relief because his jury had not been instructed that they had to agree unanimously on each predicate violation. App. 9. The District Court dismissed Dodd's §2255 motion as time barred. *Id.*, at 11–15. Because *Richardson* had been decided more than one year before Dodd filed his motion, the court held that the motion was untimely; it also rejected Dodd's request for equitable tolling. App. 13–15.

Dodd appealed, arguing that the limitation period in §2255, ¶6(3), did not begin to run until April 19, 2002, when the Court of Appeals for the Eleventh Circuit held in *Ross* v. *United States*, 289 F. 3d 677, that the right recognized in *Richardson* applies retroactively to cases on collateral review. The Eleventh Circuit held that the

limitation period began to run on "the date the Supreme Court *initially* recognizes the right"—the date *Richardson* was decided—and accordingly affirmed the dismissal of Dodd's motion as time barred. 365 F. 3d 1273, 1283 (2004).

We granted certiorari, 543 U. S. \_\_ (2004), to resolve a conflict in the Courts of Appeals over when the limitation period in ¶6(3) begins to run. Compare, *e.g.,* 365 F. 3d, at 1283 (case below) (period runs from date of Supreme Court decision initially recognizing right asserted); and *United States* v. *Lopez,* 248 F. 3d 427, 432–433 (CA5 2001) (same), with *Pryor* v. *United States,* 278 F. 3d 612, 616 (CA6 2002) (period does not begin to run until right has been held retroactively applicable to cases on collateral review); and *United States* v. *Valdez,* 195 F. 3d 544, 547–548 (CA9 1999) (same).

## II

Section 2255, ¶6, provides:

"A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

"(1) the date on which the judgment of conviction becomes final;

"(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

"(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

"(4) the date on which the facts supporting the claim or claims presented could have been discovered

through the exercise of due diligence."

In most cases, the operative date from which the limitation period is measured will be the one identified in ¶6(1): "the date on which the judgment of conviction becomes final." *Ibid.;* see also *Clay, supra,* at 524. But later filings are permitted where subparagraphs (2)–(4) apply. This case involves ¶6(3), which gives §2255 applicants one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Dodd contends that under subparagraph (3), the limitation period runs from the date on which the right asserted was made retroactively applicable. The United States, on the other hand, argues that it runs from the date on which this Court initially recognized the right asserted.

We believe that the text of ¶6(3) settles this dispute. It unequivocally identifies one, and only one, date from which the 1-year limitation period is measured: "the date on which the right asserted was initially recognized by the Supreme Court." We "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253–254 (1992). What Congress has said in ¶6(3) is clear: an applicant has one year from the date on which the right he asserts was initially recognized by this Court.

Dodd urges us to adopt a different interpretation. He contends that the second clause in ¶6(3) affects the applicable date under that provision. He reads ¶6(3) as containing "three distinct prerequisites" that "must be satisfied before the limitation period begins." Brief for Petitioner 8. Those three prerequisites are: (1) the right asserted by the applicant "was initially recognized" by this Court; (2) this Court "newly recognized" the right; and (3)

a court must have "made" the right "retroactively applicable to cases on collateral review." *Id.*, at 13–14 (internal quotation marks omitted). Because the Court of Appeals for the Eleventh Circuit did not hold the right recognized in *Richardson* v. *United States,* 526 U. S. 813 (1999), retroactively applicable until April 19, 2002, when it decided *Ross,* 289 F. 3d 677, Dodd contends that he had until April 19, 2003—one year from the date when all three prerequisites were satisfied—to file his §2255 motion.

Dodd's interpretation does not square with the only natural reading of the text. Paragraph 6(3) identifies *one date and one date only* as the date from which the 1-year limitation period runs: "the date on which the right asserted was initially recognized by the Supreme Court." Dodd's reliance on the second clause to identify the operative date is misplaced. That clause—"if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"—imposes a condition on the applicability of this subsection. See Webster's Third New International Dictionary 1124 (1993) (the definition of "if" is "in the event that" or "on condition that"). It therefore limits ¶6(3)'s application to cases in which applicants are seeking to assert rights "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." §2255, ¶6(3). That means that ¶6(3)'s date—"the date on which the right asserted was initially recognized by the Supreme Court"—does not apply at all if the conditions in the second clause—the right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"—have not been satisfied. As long as the conditions in the second clause are satisfied so that ¶6(3) applies in the first place, that clause has no impact whatsoever on the date from which the 1-year limitation period in ¶6(3) begins to run. Thus, if this Court decides a

case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his §2255 motion. He may take advantage of the date in the first clause of ¶6(3) only if the conditions in the second clause are met.

We recognize that the statute of limitations in ¶6(3) makes it difficult for applicants filing second or successive §2255 motions to obtain relief. The limitation period in ¶6(3) applies to "all motions" under §2255, initial motions as well as second or successive ones. Section 2255, ¶8(2), narrowly restricts an applicant's ability to file a second or successive motion. An applicant may file a second or successive motion only in limited circumstances, such as where he seeks to take advantage of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." §2255, ¶8(2). Dodd points out that this Court rarely decides that a new rule is retroactively applicable within one year of initially recognizing that right. Thus, because of the interplay between ¶¶8(2) and 6(3), an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law will be time barred except in the rare case in which this Court announces a new rule of constitutional law and makes it retroactive within one year.

Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000) (internal quotation marks omitted). See also *Tyler* v. *Cain*, 533 U. S. 656, 663, n. 5 (2001) ("[E]ven if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of

new rules, we do not have license to question the decision on policy grounds"). The disposition required by the text here, though strict, is not absurd. It is for Congress, not this Court, to amend the statute if it believes that the interplay of ¶¶8(2) and 6(3) of §2255 unduly restricts federal prisoners' ability to file second or successive motions.

JUSTICE STEVENS would hold, contrary to the plain text, that the limitation period in ¶6(3) begins to run when the right asserted is made retroactive, see *post*, at 9–10 (dissenting opinion), because he assumes that "the most natural reading of the statutory text would make it possible for the limitations period to expire before the cause of action accrues," *post,* at 1. JUSTICE STEVENS analogizes this case to *Graham County Soil & Water Conservation Dist.* v. *United States*, *ex rel. Wilson, post,* p. \_\_, see *post*, at 1 (dissenting opinion), but *Graham County* is distinguishable. The text of the statute at issue in *Graham County* is ambiguous, justifying the Court's partial reliance on "the 'standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.'" See *Graham County*, *post,* at 5–8, and n. 2. Here, there is no such ambiguity; ¶6(3) clearly specifies the date on which the limitation period begins to run.

## III

Dodd's §2255 motion sought to benefit from our holding in *Richardson*, *supra*, which was decided on June 1, 1999. Thus, he had one year from that date within which to file his motion. Because he did not file his motion until April 4, 2001, the motion was untimely. We therefore affirm the judgment of the Court of Appeals for the Eleventh Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–5286

_____

## MICHAEL DONALD DODD, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 20, 2005]

JUSTICE STEVENS, with whom JUSTICE SOUTER, JUS-
TICE GINSBURG, and JUSTICE BREYER join as to Part II,
dissenting.

Because the same anomalous factor is present in both
this case and in *Graham County Soil & Water Conserva-
tion Dist.* v. *United States ex rel. Wilson, post,* p. ___, and
is decisive in my analysis of both cases, it is appropriate to
explain my views in a single opinion. In each case the
most natural reading of the statutory text would make it
possible for the limitations period to expire before the
cause of action accrues. Whether the source of this possi-
ble result is merely the use of careless wording or an
incorrect assumption by Congress concerning the timing of
two relevant events, I am convinced that Congress did not
intend to authorize such a perverse result in either case.
Thus, while I agree with much of the reasoning in the
Court's cogent opinion in *Graham County,* I write sepa-
rately because I would agree with the Court of Appeals'
reading of the text of 31 U. S. C. §3731(b)(1) were it not for
this anomaly. In this case, however, because that same
factor provides an even stronger reason for rejecting the
interpretation of 28 U. S. C. §2255, ¶6(3), that the Court
endorses, I would reverse the judgment of the Court of
Appeals.

# I

In *Graham County*, respondent and the Government argue (and the Court of Appeals held) that the 6-year limitations period applicable to a "civil action under section 3730," 31 U. S. C. §3731(b)(1), applies to the retaliation action authorized by §3730(h). That argument is supported by a literal reading of the statutory text; for §3730(h) plainly qualifies as "a civil action under section 3730." Moreover, that reading derives strong support from the interest in having a uniform federal statute of limitations govern the litigation of federal causes of action. Cf. *Jones* v. *R. R. Donnelley & Sons Co.,* 541 U. S. 369, 377–383 (2004). Nevertheless, I agree with the Court that another reading of the text is far more plausible, and with its conclusion that when choosing between two constructions of a statute of limitations, whenever possible we should prefer the construction that starts the time limit running when the cause of action accrues.[1]

---

[1] Contrary to the Court's comment in *Graham County*, *post*, at 9, n. 2, I do not suggest that a statute providing that the limitations period begins to run before the cause of action accrues is necessarily ambiguous. Rather, as JUSTICE THOMAS' scholarly footnote demonstrates, *Graham County, post*, at 9–11, n. 3, it is so unlikely that a legislature would actually intend such an anomalous design that I would presume that the anomaly was the product of a drafting error absent evidence in either the legislative history or elsewhere in the text that Congress specifically intended such a result. See *Koons Buick Pontiac GMC, Inc.* v. *Nigh,* 543 U. S. ___, ____ (2004) (STEVENS, J., concurring) (slip op., at 1–2).

The literal text of §3731(b)(1), which uses an event that is not an element of the retaliation cause of action to start the limitations period running, produces two anomalies: (1) the statute may never begin to run and (2) it may expire before the cause of action accrues. The Court argues that the first anomaly makes the statute ambiguous and that the second justifies resort to a default rule to resolve the ambiguity. In my judgment, the latter anomaly would provide a sufficient justification for resort to the default rule whether or not some other feature of the statute would support an argument that the text was "ambiguous."

In *Graham County* that choice is compelled by the interaction between two relevant events: the "violation of §3729" and the retaliatory act against the whistle-blower. Section 3731(b)(1) provides that a "civil action under section 3730" must be brought within six years of a "violation of section 3729." If this section were read to encompass retaliation claims under §3730(h), as held by the Court of Appeals, the statute of limitations would be triggered by the "violation of §3729"; that is, the limitations period would begin to run before the cause of action for retaliation accrues, and could potentially expire before an actionable retaliation claim even exists. See *Graham County, post,* at 11; *United States ex rel. Wilson* v. *Graham County Soil & Water Conservation Dist.*, 367 F. 3d 245, 260–261 (CA4 2004) (Wilkinson, J., dissenting). Thus, the potentially prolonged time period between the two relevant events—the violation of §3729 (triggering the limitations period) and the retaliation against the whistle-blower (giving rise to an actionable claim)—could leave the well-intentioned whistle-blower without any recourse under §3730(h), the very statute designed to provide such protection.

The Court rightly avoids that harsh and counterintuitive result by adopting a construction of the statute that would generally start the running of the limitations period from the date the cause of action accrues, *i.e.*, when the act or acts of retaliation occur. As JUSTICE THOMAS explains, that is not only the prevailing rule applied throughout the country to analogous state-law claims, *Graham County, post,* at 9–11, n. 2; it is also the background norm against which Congress legislates, *Graham County, post,* at 8–9. Because Congress surely did not intend to create a cause of action for retaliation with one hand, and impose with the other a premature trigger date for the limitations period with the potential to bar retaliation claims altogether, I concur in the judgment in *Graham County*.

## II

The same potential for premature expiration of a statute of limitations is the primary reason why I cannot join the Court's anomalous construction of the statute in this case. The statute we are called upon to interpret provides a 1-year period of limitation for a habeas petition that has as its basis a new rule of criminal law or criminal procedure that has retroactive application. Title 28 U. S. C. §2255, ¶6(3), provides that "the limitation period shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." There are two possible interpretations of when the period should start to run: from the date that this Court recognizes the new right, or from the date that both conditions[2] in ¶6(3) are met.

If, as I believe Congress thought to be the case, this Court made a decision concerning a new rule's retroactive application at the same time it recognized the new right, the statutory scheme would make perfect sense: Petitioners, whether filing an initial habeas petition or a second or successive petition, would have one year from this Court's decision to file a petition for a writ taking advantage of that decision. Within a relatively short amount of time, those claims would be adjudicated, and the statute's goals of finality would be duly served. In practice, however, this Court does not ordinarily make retroactivity judgments at the time a new right is recognized.[3] See, *e.g., Ring* v.

––––––––

[2] Section 2255, ¶6(3), technically has three requirements: that a right be "initially recognized," that it be "newly recognized," and that it be "made retroactively applicable." In practice, however, the first two requirements are one and the same. Hence, in this opinion I will refer only to the requirements (1) that a right be newly recognized and (2) that it be made retroactively applicable.

[3] The retroactivity issue is not normally argued in the same case that

*Arizona,* 536 U. S. 584 (2002) (applying *Apprendi* v. *New Jersey,* 530 U. S. 466 (2000), to determinations of death penalty eligibility); *Schriro* v. *Summerlin,* 542 U. S. 348 (2004) (concluding *Ring* was not retroactive). Thus, as in *Graham County*, the statute implicates two relevant events: this Court's recognition of a new right (which, according to the majority, triggers the limitation period) and the declaration that the right can be applied retroactively (which allows a petitioner to proceed with the claim). Because a significant amount of time may elapse during the interval between the triggering event and the point at which a petitioner may actually be able to file an action seeking relief under the statute, there is a real risk that the 1-year limitation period will expire before the cause of action accrues. In my judgment, the probable explanation for statutory text that creates this risk is Congress' apparent assumption that our recognition of the new right and our decision to apply it retroactively would be made at the same time. Otherwise it seems nonsensical to assume that Congress deliberately enacted a statute that recognizes a cause of action, but wrote the limitation period in a way that precludes an individual from ever taking advantage of the cause of action.

We are thus faced with the same decision as in *Graham County:* Do we interpret the statute in such a way as to allow prisoners such as Dodd to take advantage of the full year Congress provided for such claims, or do we interpret the statute in such a way that the limitation period will begin to run before a prisoner may take advantage of ¶6(3)? As an initial matter, the text here certainly permits both readings, just as it did in *Graham County*.

---

announces a new rule because the prisoner is only interested in the outcome of his own case. Moreover, in order to minimize the impact of the new rule at issue, he actually has an incentive to minimize its consequences.

Paragraph 6(3) requires that two prerequisites must be met before a habeas petitioner can take advantage of that date as the starting point for the statute of limitations. Both requirements are in the past tense, and both must be satisfied before ¶6(3) is applicable. Furthermore, just as the clause "if that right has been newly recognized by the Supreme Court" describes the date indicated in the phrase "the date on which the right asserted was initially recognized," it is possible to read the subordinate clause "if that right has been. . .made retroactively applicable to cases on collateral review" as amplifying the description of the date in the provision's main clause, rather than adding an additional qualifier. Consequently, while the majority's reading of ¶6(3)—requiring that the statute of limitations begin to run when this Court recognizes a new rule—may be the more natural reading of the text, that advocated by petitioner—starting the statute of limitations when the new rule is held to be retroactive—is by no means implausible.[4]

––––––––––

[4] I should note an additional point of disagreement with the majority (and with petitioner). In reaching its result, the Court relies on an assumption made by both parties and not challenged in this Court: namely, that the decision to make a new rule retroactive for purposes of this section can be made by any lower court. While I recognize that every Circuit to have addressed the issue has made the same assumption, I am satisfied that the Government's initial interpretation of this provision is the correct one. See Brief for United States as *Amicus Curiae* in *Tyler* v. *Cain,* O. T. 2000, No. 00–5961, p. 16, n. 7. Under that interpretation, the requirement that "the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" is met only if the *Supreme Court* has made the right retroactive.

Courts that have reached the contrary conclusion have principally relied on the fact that 28 U. S. C. §2244(b)(2)(A) contains an explicit requirement that a new rule be "made retroactive . . . *by the Supreme Court.*" (Emphasis added.)  See *Ashley* v. *United States*, 266 F. 3d 671, 674 (CA7 2001).  Thus, the argument goes, the absence of "by the Supreme Court" after "made retroactive" must have some meaning.

STEVENS, J., dissenting

Moreover, the potential for claims to be prematurely barred by the statute of limitations is even greater than in *Graham County*. There, the possibility that the 6-year statute of limitations period could run before the cause of action accrued, while plausible, was not particularly likely, since in most cases the retaliatory conduct that would form the basis of the cause of action under 31 U. S. C. §3730(h) would probably occur within six years of the violation of §3729.[5] In this case, owing to the substan-

—————

However, in that clause there is only one verb that the prepositional phrase "by the Supreme Court" can modify, whereas in the relevant clause of §2255, ¶6(3), there are two: newly recognized and made retroactive. The more natural reading of ¶6(3) is that the prepositional phrase "by the Supreme Court" modifies *both* verbs of the subordinate clause. This reading comports with Congress' general direction that this Court, and not the lower courts, should provide the final answer to questions of interpretation arising under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See, *e.g.,* 28 U. S. C. §2254(d)(1) (requiring that a state-court decision be contrary to "clearly established Federal law, *as determined by the Supreme Court of the United States*" (emphasis added)). Additionally, it avoids difficult questions of which court can make a retroactivity determination, sets a uniform date by which lower courts can make determinations as to whether a petition is timely, and means that only those cases made retroactive by this Court can form the basis for a petition that can gain the benefit of tolling under §2255, ¶6(3). Finally, it is the only interpretation that gives full effect to §2255, ¶8(2), which allows prisoners who have already completed one round of federal habeas review to seek additional relief on the basis of such a new rule.

Ultimately, this reading has no direct bearing on the question presented in this case. While my view that this Court must make the retroactivity determination informs my belief that Congress had a mistaken understanding of how ¶6(3) would operate in practice, I would conclude that the 1-year limitation period begins to run when both requirements of ¶6(3) are met regardless of which court makes the retroactivity decision.

JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER do not join this footnote.

[5] As the majority in *Graham County* noted, however, in almost every case the statute of limitations would begin to run before the cause of action actually accrued. See *post,* at 11.

tially shorter 1-year statute of limitation period, both requirements of 28 U. S. C. §2255, ¶6(3), will often not be met before the statute of limitation period has expired if it is triggered by the decision of the Supreme Court announcing a new rule.

  That result is certainly true for Dodd himself. *Richardson* v. *United States,* 526 U. S. 813, was decided on June 1, 1999. Under the majority's interpretation, the statute of limitations thus expired on June 1, 2000, one year after we recognized the new rule. The Eleventh Circuit, however, did not decide whether *Richardson* was retroactive until April 19, 2002.[6] See *Ross* v. *United States*, 289 F. 3d 677 (CA11 2002). Thus, Dodd would not, under the majority's interpretation, have been able to raise his claim at all, since the statute of limitations expired before he could have taken advantage of ¶6(3)'s 1-year grace period.[7]

──────────

  [6] This assumes that the Eleventh Circuit is the relevant "court" to decide the retroactivity question, an issue the majority fails to address. Even if a district court, as opposed to the Court of Appeals, could make that determination for purposes of ¶6(3), the District Court for the Southern District of Florida has not decided the issue in a published opinion.

  [7] This would be true for prisoners in every Circuit except the Sixth Circuit, in which a prisoner would have had six months to file his petition. See *Murr* v. *United States*, 200 F. 3d 895 (Jan. 7, 2000). In the five other Circuits besides the Eleventh to have decided the issue, all held *Richardson* v. *United States,* 526 U. S. 813 (1999), to be retroactive more than one year after *Richardson* was decided; in all of those Circuits, prisoners' claims under *Richardson* would be time barred before they were able to file under ¶6(3). See *Santana-Madera* v. *United States*, 260 F. 3d 133 (CA2 Aug. 3, 2001); *United States* v. *Lopez*, 248 F. 3d 427 (CA5 Apr. 16, 2001); *Lanier* v. *United States*, 220 F. 3d 833 (CA7 June 12, 2000); *United States* v. *Montalvo*, 331 F. 3d 1052 (CA9 June 9, 2003); *United States* v. *Barajas-Diaz*, 313 F. 3d 1242 (CA10 Dec. 3, 2002); *Ross* v. *United States*, 289 F. 3d 677 (CA11 Apr. 19, 2002). The Eighth Circuit appears to have assumed the retroactive application of *Richardson*, but that too was decided more than a year after *Richardson* itself. See *United States* v. *Scott*, 218 F. 3d 835 (July 7, 2000). Of course, if any of the other four Circuits that have not yet

Even for those prisoners who are incarcerated in a juris-diction in which the new rule is quickly held to be retroac-tive, at least part of the 1-year period in which to file a claim taking advantage of the retroactive rule will run before the petition raising the claim can be filed.[8]

Thus, the admonition in *Graham County* that "Congress generally drafts statutes of limitations to begin when the cause of action accrues," *post,* at 11, applies with special force in this case. Paragraph 6(3) both recognizes a basis for habeas relief by allowing an otherwise barred claim to go forward if certain conditions are met, and also sets forth a 1-year statute of limitation for such claims. It would make no sense for Congress, in the same provision, both to recognize a potential basis for habeas relief and also to make it highly probable that the statute of limita-tion would bar relief before the claim can be brought. Again, this is not simply a remote possibility: it is true for Dodd himself, and in 6 of the 7 Circuits to have addressed whether *Richardson* is retroactive. See n. 7, *supra.* It is this absurd result that convinces me that Congress could not have intended that ¶6(3) should be read in this manner. Even if the text is as clear as the majority claims (a proposi-tion I reject), we should still interpret the text in a manner that would avoid such an absurd result. See, *e.g., Clinton* v. *City of New York,* 524 U. S. 417, 429 (1998); *Church of Holy Trinity* v. *United States,* 143 U. S. 457, 459 (1892).

To avoid this result, I would interpret ¶6(3) to begin to

—————————

decided the issue were to conclude *Richardson* was retroactive, the statue of limitations would have long since expired, and prisoners would be similarly barred from taking advantage of any such decision.

[8] In *Tyler* v. *Cain,* 533 U. S. 656 (2001), it appeared that a majority of the Court recognized that the Court could make a new rule retroactive "through multiple holdings that logically dictate the retroactivity of the new rule." *Id.,* at 668 (O'CONNOR, J., concurring). In such a case, a prisoner could file a petition under ¶6(3) immediately. Since there was much disagreement over when that would be the case, however, that potential exception holds small comfort in this case.

run only when the Supreme Court has initially recognized the new right *and* when that right has been held to be retroactive. Under this interpretation, the statute of limitation would not begin to run until the prisoner was actually able to file a petition under ¶6(3), which is the only interpretation Congress could have intended. Although in enacting AEDPA Congress was clearly concerned with finality, see *Duncan* v. *Walker*, 533 U. S. 167, 179 (2001), ¶6(3) is an explicit exception to that general preference. Congress surely intended to allow habeas petitioners to take advantage of the new rights that this Court deems retroactive. Otherwise, there would have been no reason to include that section in the statute. That is why, "[a]bsent other indication, a statue of limitations begins to run at the time the plaintiff has the right to apply to the court for relief." *Graham County, post,* at 8–9 (quoting *TRW Inc.* v. *Andrews,* 534 U. S. 19, 37 (2001) (SCALIA, J., concurring in judgment) (internal quotation marks and citation omitted)).[9]

---

[9] The approach that the Court takes in *Graham County* and the approach I would take here has support in our prior case law. In *Fleischmann Constr. Co.* v. *United States ex rel. Forsberg,* 270 U. S. 349 (1926), the Court was faced with the interpretation of the Materialmen's Act of 1894, as amended, which allowed a private creditor to bring suit against a party contracting with the United States, provided that the United States did not itself bring suit "within six months from the completion and final settlement" of the contract. 33 Stat. 812. Such a creditor had one year from the completion of the contract and final settlement to bring a suit, giving him a 6-month window within which to file his claims. If any other creditors wanted to bring suit, they had to join the action of the original creditor, but under the statute had only one year from "the completion of the work" in which to do so. *Ibid.* As the Court in *Fleischmann* recognized, if taken literally this last section would have meant that in a case in which the "final settlement" of the contract occurred more than six months after work was completed on the contract—as "frequently" happened—only the initial creditor to file suit would have been able to meet the requirement of the statute of limitations; any subsequent creditor would have been barred under the second statute of limitation that did

In addition to creating the perverse result that the statute of limitations will run before a prisoner can file an initial habeas petition, the Court's myopic reading of ¶6(3) effectively nullifies 28 U. S. C. §2244(b)(2)(A), which allows prisoners to file second or successive applications based on a retroactive rule.[10] As the majority recognizes in what amounts to a dramatic understatement, its interpretation of ¶6(3) "makes it difficult for applicants filing second or successive §2255 motions to obtain relief." *Ante*, at 6. Because of the way ¶¶6(3) and 8(2) interact, a prisoner can only file a second or successive petition based on a newly recognized rule that has been made retroactive if this Court has held the rule to be retroactive within one year of recognizing it. Unfortunately for such prisoners, however, this Court has never done so since *Teague* v. *Lane,* 489 U. S. 288 (1989), was decided.[11] Because of the

---

not reference the final settlement as a start date, but rather only the completion of work. 270 U. S., at 361. Rather than permit these "unjust or absurd consequences," *id*., at 360, the Court interpreted "within one year from the completion of the work" to mean "within one year after the performance and final settlement of the contract." *Id*., at 362.

　*Fleischmann* thus presents the identical situation as in *Graham County* and *Dodd:* Because of the unforeseen possibility that two relevant events might occur far apart in time, the most natural reading of the statute would cause the statute of limitations to expire before the suit may be brought. As we did in *Fleischmann* and in *Graham County*, we should construe the statute of limitations in *Dodd* to avoid this unnatural result.

　[10] Our cases make clear that when interpreting a particular section of a statute, we look to the entire statutory scheme rather than simply examining the text at issue. See *Koons,* 543 U. S., at ___ (2004) (slip op., at 8). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, *or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law*." *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.,* 484 U. S. 365, 371 (1988) (citation omitted and emphasis added).

　[11] Again, it is possible that a combination of our decisions has effec-

need for percolation, and the time it takes for cases to come to this Court from the courts below, it seems unlikely (to say the least) that we would ever do so. Therefore, the majority's interpretation of ¶6(3) effectively nullifies ¶8(2). It is, of course, a basic canon of statutory construction that we will not interpret a congressional statute in such a manner as to effectively nullify an entire section. See, *e.g., Duncan*, 533 U. S., at 174 ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (citations omitted)). It is a strange principle that requires strict adherence to the text of one provision while allowing another to have virtually no real world application. It would seem far wiser to give *both* sections the meaning that Congress obviously intended.

Accordingly, while I concur in the judgment in *Graham County*, I respectfully dissent in *Dodd*.

------

tively done this, see n. 8, *supra,* but we have never actually recognized an instance in which that has occurred.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–5286

_____

## MICHAEL DONALD DODD, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 20, 2005]

JUSTICE GINSBURG, with whom JUSTICE BREYER joins, dissenting.

Essentially for reasons stated by JUSTICE STEVENS, I conclude that 28 U. S. C. §2255, ¶6(3), is most sensibly read to start the time clock on the date a right is "made retroactively applicable to cases on collateral review." I therefore join, in principal part, Part II of JUSTICE STEVENS' dissenting opinion.*

The Court's interpretation—that the limitation period begins on "the date on which the right asserted was initially recognized by [this] Court," 28 U. S. C. §2255, ¶6(3)— presents "a real risk that the 1-year limitation period will expire before [a §2255 petitioner's] cause of action accrues," *ante*, at 5 (STEVENS, J., dissenting). By contrast, as JUSTICE BREYER explains in his dissenting opinion in *Graham County Soil & Water Conservation Dist.* v. *United*

——————
*Petitioner and respondent assume, for the purpose at hand, that a controlling decision whether a right operates retroactively may be made by a court of appeals. See Tr. of Oral Arg. 5–7, 20, 24, 41; Brief for Petitioner 13–14, and n. 2, 25, and n. 5, 26–28; Brief for United States 17–18, and n. 5, 23. We have no cause in this case to question that assumption. I therefore do not subscribe to JUSTICE STEVENS' statements that only this Court has the prerogative to make the retroactivity determination. See *ante*, at 6–7, n. 4. I would await full adversarial presentation before expressing an opinion on that issue.

*States ex rel. Wilson, post*, at 5–6, a determination that the False Claims Act's six-year statute of limitations, see 31 U. S. C. §3731(b)(1), governs civil suits for retaliation under the Act, see §3730(h), ordinarily would work no claim deprivation. See *ante*, at 7–8 (STEVENS, J., dissenting) (In *Graham County*, "the possibility that the 6-year statute of limitations period could run before the cause of action accrued, while plausible, was not particularly likely, since in most cases the retaliatory conduct that would form the basis of the cause of action under 31 U. S. C. §3730(h) would probably occur within six years of the violation of §3729. [In cases like *Dodd*, on the other hand,] owing to the substantially shorter 1-year statute of limitation period, both requirements of 28 U. S. C. §2255, ¶6(3), will often not be met before the statute of limitation period has expired if it is triggered by the decision of the Supreme Court announcing a new rule." (footnote omitted)).

Nearly 20 years have passed since Congress amended 31 U. S. C. §3731(b)(1) to provide that "[a] civil action under section 3730 may not be brought . . . more than 6 years after the date on which the violation of section 3729 is committed." See *Graham County*, *post*, at 2. Yet petitioner Graham County District has been unable to cite a single instance in which a suit has been time barred because the alleged retaliation proscribed by §3730(h) fell outside the period triggered by submission of a false claim in violation of §3729. See Tr. of Oral Arg. in No. 04–169, pp. 4–6; Brief for Respondent in No. 04–169, pp. 4, 15–16; Brief for United States as *Amicus Curiae* in No. 04–169, pp. 27–28; see also *Graham County*, *post*, at 5 (BREYER, J., dissenting). As Dodd's case illustrates, however, on the Court's reading, it is "highly probable" that the 28 U. S. C. §2255, ¶6(3), limitation "would bar relief before the claim can be brought." *Ante*, at 9 (STEVENS, J., dissenting). Accordingly, I would not, as JUSTICE STEVENS does, bracket the instant case with *Graham County*.

True, the limitation period in *Graham County*, like the §2255, ¶6(3), limitation, is triggered by an event that may precede the accrual date of a claim. But the resemblance ends there. The generous six-year span in 31 U. S. C. §3731(b)(1), in practical effect, will give the plaintiff leeway to commence suit she likely will not have under the typically shorter state limitation. See *Graham County*, *post*, at 5 (BREYER, J., dissenting). The opposite effect would attend 28 U. S. C. §2255, ¶6(3). The one-year limitation specified there, if triggered by the date on which this Court "initially recognized" the right asserted, bars Dodd and will bar most "new rule" petitioners from presenting their claims. It exalts form over reality to equate the two statutes and cases for time-bar purposes.