N.R. SMITH, Circuit Judge, dissenting: Because neither the Toxic Substances Control Act and the amendments in the Paint Hazard Act (collectively referred to as “TSCA”) nor the Administrative Procedures Act (“APA”) mandates the Environmental Protection Agency (“EPA”) to act, the majority improperly granted a writ of mandamus. Therefore, I must dissent. I. A writ of mandamus is a “drastic [remedy], to be invoked only in extraordinary situations.” Kerr v. U. S. Dist. Court for N. Dist. of California, 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). “To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists.” Am. Hosp. Ass’n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016). “These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction.” Id. Here, Plaintiffs failed to satisfy their burden of proving that the EPA had a clear duty to act under the TSCA or the APA, thus entitling Plaintiffs to clear and indisputable relief. Therefore, we lack jurisdiction to grant the writ. Let me explain why granting this drastic remedy was in error. A. The majority first finds a clear duty to act in the TSCA. Let us examine that premise. In enacting the TSCA, Congress was clear about its purpose: “to develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible”; and “to encourage effective action to prevent childhood lead poisoning by establishing a workable framework for lead-based paint hazard evaluation and reduction and by ending the current confusion over reasonable standards of care.” 42 U.S.C. § 4851a(l), (3). Congress further articulated that “the Federal Government must take a leadership role in building the infrastructure—including an informed public, State and local delivery systems, certified inspectors, contractors, and laboratories, trained workers, and available financing and insurance—necessary to ensure that the national goal of eliminating lead-based paint hazards in housing can be achieved as expeditiously as possible.” 42 U.S.C. § 4851(8). However, “as any student of the legislative process soon learns, it is one thing for Congress to announce a grand goal, and quite another for it to mandate full implementation of that goal.” Nat’l Wildlife Fed’n v. Gorsuch, 693 F.2d 156, 178 (D.C. Cir. 1982). Thus, in order to issue a writ of mandamus, we must examine the language of the TSCA to determine whether there is a Congressional mandate for the EPA to act. The language of the TSCA evidences that Congress mandated that the EPA “promulgate regulations ■ which shall identify ... lead-based paint hazards, lead-contaminated dust, and lead-contaminated soil,” “[w]ithin 18 months after October 28, 1992.” 15 U.S.C. § 2683. Everyone agrees that the EPA met that mandate. The majority relies on Congress’s “findings,” 42 U.S.C. § 4851, and “purposes,” § 4851a, to conclude that Congress mandated a further duty. Examining the language of these statutes, they do not mandate a duty to act; they merely outline the “grand goals” of Congress. As a general rule in statutory interpretation, “[preambles to statutes do not impose substantive rights, duties or obligations.” Nat’l Wildlife Fed’n v. Marsh, 721 F.2d 767, 773 (11th Cir. 1983) (citing Ass’n of Am. RRs v. Costle, 562 F.2d 1310, 1316 (D.C. Cir. 1977); Alexander v. HUD, 555 F.2d 166, 171 (7th Cir. 1977)). Nothing in the TSCA or related statutes (beyond the preamble) outlines a further duty to act to implement those goals. Despite the majority’s reliance on “findings” and “purposes,” Congress did not mandate, an ongoing duty with regard to promulgating regulations in order to reach the stated purpose of “eliminat[ing] lead-based paint hazards,” 42 U.S.C. §.4851a(l). Instead, the language of the TSCA evidences that Congress made further regulation (after 1994) discretionary. Congress said, “The regulations may be amended from time to time as necessary.”[1] 15 U.S.C. § 2687 (emphasis added). The majority correctly noted that. Congress mandated that a task force be created to make recommendations concerning “revising guidelines, regulations, and educational pamphlets issued by the Department of Housing and Urban Development and other Federal agencies relating to lead-based paint poisoning prevention.” 42 U.S.C.§ 4852a(a), . (c)(5). However, Congress did not even mandate that the EPA accept or act on those task force recommendations nor did Congress alter the discretionary language of 15 U.S.C. § 2687 regarding-the EPA’s duty to act. in promulgating regulations. Despite these stated goals (“findings” and “purposes”), there is nothing in the plain language of the TSCA,. which mandates that EPA has a continuing duty to implement regulations to meet the goals. Cf. Tashima v. Admin. Office of U.S. Courts, 967 F.2d 1264, 1271 (9th Cir. 1992) (noting that “the use of the term ‘may[1] bars a finding that the statute establishes a clear unambiguous duty ..., and thus bars a mandamus action”); see also United States v. Rodgers, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (explaining that “[t]he word ‘may,’ when used in a statute, .usually implies some degree of discretion”). Although it is tempting to interpret Congress’s use of the term “may” to create a duty in light of Congress’s broad “purposes” and “findings,” we should use caution in relying on Congress’s “admirable goal” of eliminating lead poisoning “to alter the apparent meaning of a specific provision.” United States v. Plaza Health Labs., Inc., 3 F.3d 643, 647 (2d Cir. 1993) (quoting Nat’l Wildlife Fed’n, 693 F.2d at 178). “It is not for us to rewrite the statute so that it covers ... what we think is necessary to achieve what we think Congress really intended.” Lewis v. City of Chicago, 560 U.S. 205, 215, 130 S.Ct. 2191, 176 L.Ed.2d 967 (2010). Thus, without a congressional mandate in the TSCA, we have no authority to mandate that the EPA act to meet Congress’s goals (even if we believe it is in the best interest of society for the EPA to act).[2] B. Because Petitioners failed to establish they are entitled to mandamus relief under the TSCA, they otherwise seek to establish jurisdiction under the APA, See Norton v. S. Utah Wilderness All., 542 U.S. 55, 63-65, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). As the majority notes, the APA requires agencies to “proceed to conclude a matter presented to it” “within a reasonable time.” 5 U.S.C. § 555(b). Thus, Petitioners must show that (1) the EPA had a nondis-cretionary duty to act under the APA and (2) the EPA unreasonably delayed in acting on that duty. Norton, 542 U.S. at 64, 124 S.Ct. 2373; 5 U.S.C. §§ 555(b), 701(a)(2). If Petitioners establish a right to relief, we can only “compel agency action unlawfully withheld or unreasonably delayed.” See 5 U.S.C. § 706(1). It appears that everyone agrees that the EPA fulfilled its obligation to address Petitioners’ petition under 5 U.S.C. §. 553(e). However, the dispute arises with regard to whether the EPA assumed a.nondiscre-tionary duty to engage in rulemaking when it “granted” the petition, and, whether, after granting the petition, the EPA unreasonably delayed in engaging in rule-making. See Am. Hosp.Ass’n, 812,F.3d at 189-90. Although the EPA granted the petition, the EPA did not assume a duty to engage in rulemaking.[3] Because the APA creates a clear duty to act (if at all) only to those actions agreed upon by the EPÁ, we must examine its response. In this case, Petitioners presented a petition to the EPA requesting that it begin rulemaking to (l) lower the dust-lead hazard standards, and (2) modify the definition of lead-based paint. The EPA responded to the petition. The parties agree that the EPA granted the request. However, the parties disagree what the grant provided. The language noted that the EPA would “begin an appropriate proceeding.” The EPA also clarified that it was “not committing to a specific rulemaking outcome—including the specific level of the lead dust hazard standard—or to a certain date for promulgation of a final rule.” With regard to -the definition of lead-based paint, the EPA-also noted that it would “initiate appropriate proceedings,” but clarified that it would work with the Secretary of Housing and Urban Development (“HUD”) to address the second part of the petition.[4] After the response, the EPA did not delay in beginning “appropriate proceedings.” To the contrary, the EPA engaged in research with regard to this issue, which ended just prior to this petition being fiíed. Hence, the EPA did not fail or delay in proceeding as it stated it would. ■ Nevertheless, the .majority interprets the EPA’s grant of the petition as an agreement by the EPA to engage in rule-making (even though the EPA. never stated-that it. was going to proceed in this manner). Reading the language of the order, it is not clear what the EPA meant by agreeing to “initiate appropriate proceedings”; the EPA’s “granting” of the petition .requesting rulemaking is arguably-misleading, because .the language in the grant did not commit the EPA to ever engage in rulemaking. However, under the APA, we cannot place a greater duty upon the EPA . than it agreed to do. See Norton, 542 U.S. at 64, 124 S.Ct. 2373 (“[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take”). Here, the EPA granted the petition with specific limitations, which did not necessarily include engaging in rulemak-ing. The EPA cannot be faulted by its response. As the D.O. Circuit noted, 5 U.S.C. § 553(e) “requires the agency to ‘fully and promptly consider [the petition], [and] take such action as may be required .... The agency may either grant the petition, undertake public rule making proceedings or deny the petition.”’ WWHT, Inc. v. FCC, 656 F.2d 807, 813 (D.C. Cir. 1981) (alteration omitted) (quoting S. Rep. No. 752 (1945)). “[T]he mere filing of a petition does not require an agency to grant it, or to hold a hearing, or engage in any other public rule making proceedings.” Id. (quoting S. Rep. No. 752). The EPA has the discretion to grant or deny a petition, which would include, as here, granting the petition but limiting the scope of the request. If Petitioners were not satisfied with the limitations set forth in the EPA’s response, they could have appealed the EPA’s response at that time. Alternatively, Petitioners could have filed another petition requesting rulemaking in light of the information the EPA received in addressing this issue. Petitioners did neither. Rather than reading the response and interpreting it, Petitioners and the majority criticize the EPA’s response. They assert that not finding a duty (under the APA) for the EPA to engage in rulemak-ing creates a perverse incentive for the EPA to grant petitions and then not act in an effort to avoid judicial review. However, if the EPA does not act as it suggests it will, then a petitioner can request judicial review.[5] Reading the EPA response, it is clear that the majority’s characterization (of what happened here) lacks basis. Mandamus in this case is not appropriate, because the EPA did act. See Gardner v. BLM, 638 F.3d 1217, 1221-22 (9th Cir. 2011) (noting that “in the absence of a specific legislative or regulatory command,” courts lack authority to require agency action). It responded to the petition; it engaged in proceedings related to lead paint and lead dust. Although the EPA did not engage in rulemaking as Petitioners requested, it was not required to do so. The EPA set forth its limitations and (thus far) has chosen not to engage in any further proceedings. We cannot and should not find a duty to act beyond what the agency stated it would do. Although we may not like the actions of the agency, our jurisdiction is limited to determine whether the agency assumed a duty, and, if so, the scope of that duty. Here, the EPA never assumed a duty to engage in a rule-making; rather it only assumed a duty to “begin an appropriate proceeding,” which it did.[6] C. Lastly, the majority turns to case law, Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C. Cir. 1983) (per curiam), and In re International Chemical Workers Union, 958 F.2d 1144 (D.C. Cir. 1992) (per curiam), for support. The majority asserts these cases stand for the proposition that, if Congress grants an agency the authority to amend a standard, the agency is under “a duty to act where there is an ‘obvious need, apparent to [the agency].’ ” Maj. Op. 785. One only has to read these cases to determine that the majority’s reliance on them is misplaced. In Public Citizen Health Research Group, Congress instructed the Occupation Safety and Health Administration (“OSHA”) to “give due regard to the urgency of the need for mandatory health standards for particular workplaces.”[7] Pub. Citizen Health Research Grp., 702 F.2d at 1153 (alterations omitted) (quoting 29 U.S.C. § 655(g)). The D.C. Circuit did not conclude that this language created a duty for OSHA to act. See id. Rather, it found no duty for OSHA to act based on that statutory language. Instead, the duty arose when OSHA recognized a need to act and assumed the duty when it stated it “intended] to proceed with rulemaking.” Id. at 1157; see also Int’l Chem. Workers Union, 958 F.2d at 1146 (noting that in response to a rulemaking petition, OSHA admitted a “need to embark promptly on further rulemaking”). Thus, both Public Citizen Health Research Group and International Chemical Workers Union were resolved under the APA’s mandate “to conclude [within a reasonable time] a matter presented to it.” Pub. Citizen Health Research Grp., 702 F.2d at 1153-54 (alteration in original). Neither case can be fairly read to suggest a statutory duty arises if the agency is aware of an “obvious need.” See Pub. Citizens Health Research Grp., 702 F.2d at 1154. The EPA’s refusal to act in light of the new information it obtained (even if frustrating) is within its authority set forth by Congress. Although the majority characterizes this result as a “conflict,” no conflict actually exists here. The EPA had no duty to act under the TSCA, and the EPA concluded the duties it assumed in response to the rulemaking request. The fact that the EPA may now have knowledge that the current standards are insufficient to accomplish Congress’s goals does not require it to act under either scheme the majority asserts here. Congress chose to leave it in the agency’s discretion on when or whether to amend regulations. Although I recognize that we may believe the EPA should act under these circumstances,[8] “we are not free to rewrite the statute that Congress has enacted.” Dodd v. United States, 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005). The statutory language is clear and unambiguous, and, “[w]hen the statute’s language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.” Id. (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Therefore, I respectfully dissent. . The majority suggests that "Congress did not Want EPA to set initial standards and then walk away.” Maj. Op. 784. Even assuming that Congress desired tire EPA "to engage in an ongoing process ... to modify initial standards when necessary to further Congress's intent,” it nevertheless saw fit not to require the EPA to act. . Petitioners do not argue on appeal that the EPA failed to act in accordance with its response in any manner except for Petitioners’ assertion that the EPA agreed to engage in a rulemaking. . In January 2017, HUD issued new rules regarding dust-lead hazard action levels for floors and window sills. Although the EPA indicated that it would work with HUD on the issue of the lead paint definition, the new rules are not related to the lead pa,int definition, It appears that HUD did not change the lead paint definition in the new rules. Thus, the new rules do, not clearly trigger a duty for the EPA to act. . Judicial review of an agency's decision made pursuant to § 553(e) is available, although the scope of review is ''very narrow” and deferential; the agency’s decision must be sustained "if it violates no law, is blessed with an articulated justification that makes a ‘rational connection between the facts found and the choice made,’ and follows upon a 'hard look’ by the agency at the relevant issues.” WWHT, Inc., 656 F.2d at 809, 817 (quoting Action for Children's Television v. FCC, 564 F.2d 458, 479 (D.C. Cir. 1977)). . Because I find that the EPA did not have a duty to act, I would not reach the issue of unreasonable delay. . Even if this phrase could be read to have created a duty to act, similar language is absent from the TSCA at issue here. . I am sympathetic to Plaintiffs’ arguments that the EPA should enact rules to help eliminate lead poisoning in children. The EPA does not dispute that currently approved lead levels cause harm to children. It also does not specifically dispute that levels could be lowered to help eliminate this risk. Yet, the EPA refuses to engage in rulemaking to address this issue solely because Congress has not required it to act. Counsel for the EPA represented that the EPA was not interested in working with Plaintiffs on this issue. Further, the EPA represented that it had no plans to engage in rulemaking in the future on this very serious issue (despite representations in its brief that it would conclude these proceedings by 2023). Given these circumstances, I understand the majority’s desire to find a duty for the EPA to act. I do not understand why the EPA has not acted. However, it is for Congress, not the courts, to mandate the EPA achieve the goals it set forth in its "findings” and "purposes.”